UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENISE D. TUTOLO,

                Plaintiff,

– against –

NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,

                Defendant.

**AMENDED OPINION & ORDER**

18 Civ. 10538 (ER) (KNF)

RAMOS, D.J.:

    Denise D. Tutolo brings this action pursuant to 42 U.S.C. § 405(g) challenging the July 17, 2018 decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB"). Doc. 1. Pending before the Court is Tutolo's unopposed motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Doc. 24. On December 3, 2019, Magistrate Judge Kevin Nathaniel Fox issued a Report and Recommendation, recommending that Tutolo's motion be granted and notifying the parties that they had fourteen days from service of the Report to file written objections. Doc. 31. The Commissioner timely filed an objection on December 17, 2019. Doc. 32.

## I. BACKGROUND

### A. Statutory Scheme

    An individual is considered "disabled" under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Additionally, a claimant seeking DIB must demonstrate that she became disabled before the date on which she was last insured. *Id.* §§ 416(i), 423(a) & (c)(1). In making a disability determination, the

Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant . . . ; and (4) the claimant's educational background, age, and work experience." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citations omitted).

In order to determine whether an individual is disabled, the Commissioner follows the five-step sequential evaluation process set out in 20 C.F.R. § 404.1520. At step one, the Commissioner determines whether the individual is engaged in any "substantial gainful activity"; if she is, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(i), (b). At step two, the Commissioner determines whether the individual has a "severe impairment" that "significantly limits [her] physical or mental ability to do basic work activities"; if she does not have such an impairment, she is not disabled. *Id.* § 404.1520(c), (a)(4)(ii). At step three, the Commissioner determines whether the individual has an impairment that meets or equals one of those listed in Appendix 1; if she does, she is disabled. *Id.* § 404.1520(a)(4)(iii), (d). If she does not, the Commissioner will assess and make a finding about the individual's residual functional capacity ("RFC")—or "the most [she] can still do despite [her] limitations"—based on all the relevant evidence in her case record. *Id.* §§ 404.1545(a)(1), 404.1520(e). At step four, the Commissioner determines whether, considering her RFC, the individual can still do her past relevant work; if she can, she is not disabled. *Id.* § 404.1520(a)(4)(iv), (f). Finally, at step five, the Commissioner determines whether, considering her RFC, age, education, and work experience, the individual can make the adjustment to other work; if she cannot make the adjustment to other work, she is disabled, and if she can, she is not. *Id.* § 404.1520(a)(4)(v), (g). "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### B. Procedural History

Tutolo first filed an application for DIB on February 8, 2012, alleging disability since June 26, 2011. Doc. 23 at 126–29. On May 22, 2013, the administrative law judge ("ALJ") denied Tutolo's claim, *id.* at 9–16, and Tutolo appealed to a federal district court, *id.* at 490. The district court remanded for further proceedings. *Id.* On remand, the ALJ found that Tutolo was disabled as of December 15, 2015. *Id.* at 376–93. Tutolo again appealed to a federal district court, which again reversed and remanded for further proceedings. *Id.* at 1093–94. The Appeals Council affirmed the ALJ's finding that Tutolo was disabled as of December 15, 2015 and remanded for further proceedings on the question of whether she was disabled prior to that date. *Id.* at 1096–1101. It further found that the ALJ had failed to adequately evaluate treating and non-treating medical opinions, including the opinion of Tutolo's treating orthopedist, Dr. Blanco. *Id.* at 1098–99. Tutolo attended a third administrative hearing on May 15, 2018. *Id.* at 1032–63. On July 17, 2018, the ALJ again found that Tutolo was not disabled prior to December 15, 2015. *Id.* at 1013–24. It is this decision that is on appeal. The relevant time period, then, is between June 26, 2011, the date of Tutolo's alleged onset of disability, and December 15, 2015.

Tutolo filed this action on November 13, 2018. Doc. 1. On July 2, 2019, Tutolo moved for judgment on the pleadings. Doc. 24. As per the scheduling order, the Commissioner's responsive brief was due sixty days later. Doc. 5. On August 30, 2019, the Commissioner requested an extension of time, to October 2, 2019, to file a response, and Magistrate Judge Fox granted the agency until September 16, 2019 to respond. Doc. 27. The Commissioner filed another request for an extension of time on the morning of September 16, 2019. Doc. 28. Later that day, it filed another letter stating that, in the absence of an extension of time, it would rest on the administrative record. Doc. 29. Judge Fox did not grant the extension.

On December 3, 2019, Judge Fox issued a Report and Recommendation remanding Tutolo's case to the ALJ because of an Appointments Clause violation. Doc. 31. The Commissioner timely filed objections to the Report and Recommendation on December 17, 2019. Doc. 32.

**C. May 15, 2018 Hearing Before the ALJ**

Tutolo's last hearing before the ALJ occurred on May 15, 2018 in White Plains, New York. Doc. 23 at 1032. At the hearing, Tutolo was represented by her attorney, Asheshag Aguraw. *Id.* Also present and testifying was Judy Comeroff, a vocational expert. The purpose of the hearing was to evaluate Tutolo's alleged disability only from June 26, 2011 to December 15, 2015. *Id.* at 1035–36.

Tutolo testified that she was fifty-seven years old, had a high school diploma, and had worked part-time at a school and a liquor store during the relevant period. *Id.* at 1036–1041. From January to June 2014, she worked as a cashier in a school cafeteria. *Id.* at 1038–39. She quit because the school wanted her to take on more onerous tasks, like cooking and lifting trays. *Id.* at 1041. From August 2014 to sometime in the Spring of 2016, she worked as a cashier at a liquor store. *Id.* at 1039–41. She stopped working there because she was "getting very fatigued," and "getting more pain standing, sitting." *Id.* at 1050. Though they had provided her a chair at the cafeteria, at the liquor store, they only provided her "with a cushion on top of the [conveyer] belt." *Id.* However, she did not have to stock shelves and could sit whenever she wanted, which were special allowances that other employees were not afforded. *Id.* at 1055–56. She also testified that she had been the owner of a daycare from 2004 to 2011, *id.* at 1057–58, but stopped working in 2011 because of pain in her neck, migraines, and adverse reactions to her medications, *id.* at 1042–43.

During the relevant period, she saw Dr. Blanco, her treating physician, for injections and pain management every three to four months. *Id.* at 1043. She fell in a pothole in December 2011, which exacerbated her symptoms. *Id.* at 1043–44. Between

2011 and 2015, she also had the meniscuses in both of her knees repaired, as well as more injections and epidurals in her neck. *Id.* at 1044. She tried acupuncture and physical therapy, but experienced little relief. *Id.* at 1045. During this time, she was first prescribed Vicodin and later moved to Percocet, Felxeril, and Valium. *Id.* at 1045–46. She has worn a collar nearly full-time since 2011. *Id.* at 1046. In 2013, she had surgery for the pain. *Id.* at 1046–48.

She described her typical day as getting up, sitting with a heating pad until her medication kicks in, getting dressed, and then waiting for her husband to come home from work around 11:00 AM. *Id.* at 1048–49. Her husband does most of the cooking, shopping, and driving. *Id.* at 1049–50. She can drive only very short distances. *Id*. at 1050. When she worked, she would drive to her jobs, as they were all local. *Id*. She testified that between 2011 and 2015, she traveled to Florida and Jamaica. *Id.* at 1051. Between 2011 to 2015, she would occasionally go to dinner with her husband and unsuccessfully tried certain stretching exercises to help with pain. *Id.* at 1052. She could only pick up about a gallon of milk, and could only stand for about twenty minutes at a time and sit for forty-five minutes at a time. *Id.* at 1052–54.

Comeroff, the vocational expert, then testified. She classified Tutolo's relevant past work as the owner of a daycare and as a nursery school director, both of which were classified as "light" work. *Id.* at 1059. The ALJ then asked Comeroff a series of hypotheticals. Comeroff found that the claimant in most of the ALJ's hypotheticals would not be able to perform Tutolo's past relevant work, but that there were jobs that she would be able to perform, unless the claimant needed to be absent more than three times a month. *Id.* at 1059–61.

Aguraw, Tutolo's attorney, then posed a series of hypotheticals to Comeroff. He asked Comeroff to consider an individual "limited such that their sitting, standing and walking . . . combined . . . would not add up to a total of eight hours." *Id.* at 1062. Comeroff stated that such a person would be precluded from competitive work. But she

5

found that such an individual that "could only stand for one hour in an eight-hour day," could still perform sedentary positions. *Id.*

### D. Relevant Medical Evidence

Tutolo has provided a summary of the medical evidence in the record. Doc. 25 at 2–5. Because this summary was unopposed, the Court accepts it as true for purposes of the issues raised in this suit.

### E. The ALJ's Decision

On July 17, 2018, the ALJ denied Tutolo's claim. *Id.* at 1010. To arrive at her decision, she followed the five-step test set forth in the SSA regulations. At step one, the ALJ found that Tutolo had not engaged in "substantial gainful activity" since June 26, 2011, the alleged date of onset. *Id.* at 1015. At step two, the ALJ found that Tutolo had the following severe impairments:

> obesity; cervical disc disease; herniated nucleus pulpous of the cervical spine; cervical radiculopathy; status post laser surgery at C5–6; degenerative disc disease of the cervical spine by MRI dated June 15, 2015; status post laminotomy/foraminotomy in August 2015; degenerative joint disease and meniscal tear of the left knee, status post arthroscopy in July 2012.

Doc. 23 at 1016. At this step, the ALJ further found that Tutolo's diverticulitis was not a severe impairment. *Id.* at 1017. The ALJ also found "no severe mental impairments." *Id.* In making this last determination, the ALJ relied on a consultative psychological examination by Dr. Melissa Antiaris performed in April 2012, and on a psychiatric review technique form completed by Dr. R. Petro in May 2012. *Id.*

At step three, the ALJ found that Tutolo did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in Appendix 1 of the regulations, which conclusively require a determination of disability.

Before proceeding to step four, the ALJ found that Tutolo had an RFC

> [T]o perform light work as defined in 20 CFR 404.1567(b) except occasionally, balance, stoop, kneel, crouch, crawl, and climb stairs

6

> and ramps; no ladders, ropes or scaffolds; no unprotected heights; no unprotected machinery; six out of eight hours (frequent) handling/fingering; and, frequent rotating, flexing and extending the neck.

*Id.* at 1018. The ALJ found that though Tutolo's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* In making this determination, the ALJ considered various treatments notes and medical opinions, but did not assign controlling or significant weight to the opinion of Dr. Blanco, Tutolo's treating physician, and assigned only partial weight to the opinion of Dr. Pelczar-Wissner, who performed a consultative orthopedic examination in September 2015. *Id.* at 1019–21. The ALJ also took into account Tutolo's medical history and testimony and noted Tutolo's work history during this time-period, finding that this "show[ed] that [Tutolo] was not as limited as alleged." *Id.* at 1022.

At step four, the ALJ found that Tutolo was unable to perform past relevant work, *id.* at 1022, but, at step five, she determined that there were existing jobs in the national economy that Tutolo could perform, *id.* at 1023.

### F. The Report and Recommendation

In her motion for judgment on the pleadings, Tutolo argued that the ALJ committed four errors: (1) the ALJ failed to follow the required psychiatric review technique in assessing Tutolo's mental impairment; (2) the ALJ's RFC assessment was based solely on her own lay speculation; (3) the ALJ made no findings as to Tutolo's carpal tunnel syndrome and its effect on her ability to work; and (4) the presiding ALJ was not properly appointed under the Constitution and, consequently, lacked legal authority to hear the case. Doc. 25 at 5.

On December 3, 2019, Magistrate Judge Kevin Nathaniel Fox issued a Report and Recommendation, recommending remand based solely on Tutolo's Appointments Clause

objection. Doc. 31. The Report and Recommendation found that "[s]ince the ALJ conducted a hearing in Tutolo's case on May 15, 2018, prior to appointment, on July 16, 2018 . . . Tutolo's case was not heard by a properly appointed official." Doc. 31 at 2–3.

The Report and Recommendation did not make any findings regarding Tutolo's three other arguments.

## II. STANDARD OF REVIEW

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may file specific written objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* those portions of the report and recommendation to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C). The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

This Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing a denial of disability benefits, however, the Court may not determine *de novo* whether an individual is disabled. Rather, the Court may only reverse the ALJ's determination if it is based upon legal error or is not supported by substantial evidence. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the ALJ's findings as to any fact are supported by substantial evidence, those findings are

conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). If, on the other hand, the ALJ's determination is not supported by substantial evidence or contains legal error, the determination must be reversed or remanded. *Rosa*, 168 F.3d at 77.

"Though an unopposed motion 'allow[s] the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law.'" *Wellington v. Astrue*, No. 12 Civ. 3523 (KBF), 2013, WL 1944472, at *2 (S.D.N.Y. May 9, 2013) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004)).

## III. DISCUSSION

### A. Review of the Report and Recommendation

As an initial matter, the Commissioner argues that the Court should review her objections to the Report and Recommendation *de novo*, despite her inability to comply with the briefing schedule. As the Commissioner notes, there is a split in the circuits as to whether the district court is obliged to review *de novo* all objections that were timely raised, regardless of whether they were initially presented to the magistrate judge. *See Wells Fargo Bank N.A. v. Sinnott*, No. 07 Civ. 169 (CR), 2010 WL 297830, at *1–3 (D. Vt. Jan. 19, 2010) (noting that "the Court of Appeals for the Second Circuit has not decided whether a district court must consider a legal argument raised for the first time in an objection to a magistrate judge's report and recommendation," summarizing the split, and determining that "a district court has the discretion to consider, or decline to consider, an argument raised for the first time in an objection to a magistrate judge's report and recommendation").

The Court need not wade into these waters, however, as it agrees with the Commissioner that the Report and Recommendation was based on clear error. "Clear error is present when 'upon review of the entire record, [the court is] left with the definite and firm conclusion that a mistake has been committed.'" *Rivera v. Fed. Bureau of Prisons*, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019) (quoting *United States v. Snow*, 462

9

F.3d 55, 72 (2d Cir. 2006)). The Report and Recommendation recommends remand solely based on Tutolo's argument that the ALJ was not properly appointed. *See* Doc. 31. The Supreme Court has squarely stated that a party "who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2055 (2018) (internal quotation marks and citation omitted). The issue, however, is whether or not Tutolo's challenge can be considered timely when she did not raise it during the administrative process below.[1]

"[T]he vast majority of courts that have considered this issue following *Lucia* . . . have concluded that exhaustion before the ALJ is required." *Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341, 351 (S.D.N.Y. 2019) (collecting cases); *see also Lobbe v. Berryhill*, No. 17 Civ. 5589 (HBP), 2019 WL 1274941, at *20 (S.D.N.Y. Mar. 20, 2019) ("In the context of Social Security proceedings, the overwhelming majority of district courts have held that *Lucia* requires challenges under the Appointments Clause to be raised during the administrative proceedings; courts have found that a plaintiff's failure to do so operates as a waiver."). As the court found in *Bonilla Bukhari*, Supreme Court precedent establishes that

> Regularly permitting unsuccessful claimants to raise Appointments Clause challenges for the first time on judicial review, especially when the arguments underlying those challenges were available at the administrative level, would "encourage the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the adjudicative entity pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error." *Freytag v. C.I.R.*, 501 U.S. 868, 895 (1991) (Scalia, J., concurring in part and concurring in the judgment).

---

[1] Tutolo herself acknowledges that she did not raise the issue of the ALJ's appointment during the underlying administrative process, calling this "ALJ level forfeiture." Doc. 25 at 15. And though her brief states that "ALJ level forfeiture" is "the key issue which this Court must decide," Doc. 25 at 15, the Report and Recommendation does not address it.

*Bonilla-Bukhari*, 357 F. Supp. 3d at 352 (internal quotation marks omitted) (quoting *Abbington v. Berryhill*, No. 17 Civ. 552 (KPN), 2018 WL 6571208, at *7 (S.D. Ala. Dec. 13, 2018)). The Court finds this reasoning persuasive.

In her moving brief, Tutolo argues that SSR 19–1p, effective March 15, 2019, changes the picture and "unambiguously provides that a claimant need not raise a *Lucia* Appointments Clause challenge at the ALJ level in order to obtain relief on that issue." Doc. 25 at 15. However, SSR 19–1p provides in relevant part:

> Challenges to an ALJ's authority to decide a claim may raise a broadly applicable procedural issue independent of the merits of the individual claim for benefits—that is, whether the ALJ who presided over the claimant's hearing was properly appointed under the Appointments Clause of the Constitution. We will process requests for review that include a *timely* administrative challenge to the ALJ's authority based on the Appointments Clause in the manner described below. The Appeals Council will grant the claimant's request for review in cases where the claimant: (1) timely requests Appeals Council review of an ALJ's decision or dismissal issued before July 16, 2018; and (2) *raises before us (either at the Appeals Council level, or previously had raised at the ALJ level) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision or dismissal in the case*.

SSR 19–1p (emphasis added). By its clear language, then, SSR 19–1p only refers to "timely" challenges—*i.e.* those that were raised either before the Appeals Council or the ALJ.

For the reasons stated above, the Court finds that the Report and Recommendation was based on clear error.

### B. Review of the ALJ's Decision

Tutolo does not raise a substantive defense of the Report and Recommendation, but rather argues that "[i]ndependent of any of this, [the Commissioner] has offered no defense on any of the other issues raised by Plaintiff." Doc. 33 at 1. Tutolo is correct. However, "[t]hough an unopposed motion 'allow[s] the district court to accept the movant's factual assertions as true, the moving party must still establish that the

undisputed facts entitle him to a judgment as a matter of law.'" *Wellington v. Astrue*, No. 12 Civ. 3523 (KBF), 2013, WL 1944472, at *2 (S.D.N.Y. May 9, 2013) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004)).

The Court will therefore consider Tutolo's three remaining arguments: (1) whether the ALJ failed to complete the required psychiatric review assessing Tutolo's mental impairments; (2) whether the ALJ committed significant legal error in evaluating the record; and (3) whether the ALJ failed to assess the severity of Tutolo's carpal tunnel.

*1. The Required Psychiatric Review*

Tutolo argues alleged disability, in part, based on a mental impairment, namely anxiety. Doc. 23 at 214–15, 429. As such, she requested that the ALJ follow the required procedures for assessing mental impairments. *Id.* at 613–14. Tutolo argues that the ALJ found her mental impairments "non-severe," without completing the required procedures. Doc. 25 at 6–7. Even if the finding of "non-severe" were supported, she argues, the ALJ still erred by failing to asses any limitations caused by Tutolo's anxiety. *Id.*

The Commissioner has promulgated regulations governing evaluations of the severity of mental impairments. 20 C.F.R. § 404.1520a. "These regulations require application of a 'special technique' at the second and third steps of the five-step framework, and at each level of administrative review." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted). First, the ALJ must determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If she does, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)," in terms of the claimant's ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage oneself." *Id.* §§ 404.1520a(b)(2), 404.1520a(c)(3). Based on this assessment, the ALJ will then determine whether these mental impairments qualify as severe. *Kohler*, 546 F.3d at 266. If they are severe, the ALJ will then assess whether they meet or are equivalent in severity to any of the listed mental disorders; if not, she will

assess the claimant's RFC. *Id.* Moreover, "the ALJ's written decision [must] reflect application of the technique, and . . . *must* include a specific finding as to the degree of limitation in each of the functional areas described in [§ 404.1520a(c)(3)]." *Id.* (internal quotation marks and citations omitted).

At step two, the ALJ found "no severe mental impairments." Doc. 23 at 1017. She stated that:

> A consultative psychological examination performed by Melissa Antiaris, Psy.D. in April 2012, was normal (Exhibit 2F). Dr. Antiaris diagnosed the claimant with an adjustment disorder mixed with anxiety and depressed mood and found no mental functional limitations. A psychiatric review technique form completed by R. Petro, Psy.D. in May 2012 indicated that the claimant had no mental limitations (Exhibit 4F).

*Id.* There is nothing in the decision to suggest the ALJ made any of the findings or followed the technique required by 20 C.F.R. § 404.1520a. As such, remand is warranted. *See Kohler*, 546 F.3d at 269 (remanding where the ALJ failed to follow 20 C.F.R. § 404.1520a because, as a result, the Court could not determine whether the ALJ's decision was "supported by substantial evidence and reflects application of the correct legal standards").

### 2. Error in Evaluating the Record

Tutolo next argues that the ALJ's RFC assessment was "based on lay speculation" because she either rejected or gave only "partial weight" to every medical opinion of record. Doc. 25 at 7–12. Specifically, Tutolo argues that the ALJ failed to give the appropriate weight to Dr. Blanco's and Dr. Pelczar-Wissner's opinions. *Id*.

In rejecting Dr. Blanco's opinion, the ALJ noted that his "report is in check-off format and does not provide a rationale for the limitations aside from diagnosis and subjective complaints." Doc. 23 at 1020. She also found that Dr. Blanco's opinion was contradicted by Tutolo's work history and by his own contemporaneous treatment notes "reflect[ing] a normal gait and intact strength." *Id.* Tutolo argues that these are improper

13

bases on which to reject a treating physician's opinion. Specifically, she argues that, as the Appeals Council found, Dr. Blanco's notes do *not* indicate good functioning and normal findings, and that there was nothing per-se improper about the format of Dr. Blanco's opinion (and that he also provided a non-"check-off" format opinion).

"[A]n ALJ must follow a two-step procedure to determine the appropriate weight to assign to the opinion of a treating physician." *Ferraro v. Saul*, 2020 WL 1189399, at *1 (Mar. 12, 2020) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). The first step is to decide whether the opinion is "well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the case record." *Estrella*, 925 F.3d at 95. If these criteria are met, the opinion is "entitled to controlling weight." *Id.* "Otherwise, the ALJ must proceed to step two and 'determine how much weight, if any, to give' the opinion." *Ferraro*, 2020 WL 1189399, at *1 (quoting *Estrella*, 925 F.3d at 95)). "When controlling weight is not given to a treating physician's assessment, the ALJ *must* consider the following factors to determine the weight to give the opinion: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c). The ALJ must then "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)).

On its last remand to the ALJ, the Appeals Council found that "[t]he hearing decision inadequately discounted the treatment notes from . . . [Dr. Blanco]." Doc. 23 at 1098. Specifically, it found that Dr. Blanco's contemporaneous treatment notes did not show that Tutolo "had good functioning." *Id.* Rather, it found that the treatment notes documented:

> [N]eck pain radiating to her arms and hands, hand numbness and left knee pain with knee giving out on her, reduced cervical range of motion with aggravating pain and spasms, tenderness and spasm of cervical paraspinal muscles, abnormal deep tendon reflexes of upper limbs, thoracic crepitus, hand tenderness, positive Tinel's sign in the right wrist, left hand pain with compression and gripping, limited range of motion in left knee, tenderness in the left knee, cervical MRIs showing central disc herniation, left knee MRI showing a discoid lateral meniscus with degeneration of the medial meniscus posterior horn, numerous doctors' recommendations, claimant's complaints of pain and surgery recommendations.

*Id.* at 1099. Instead of considering these treatment notes, however, the ALJ focused on a notation indicating that Tutolo had "normal gait and intact strength." *Id.* at 1020. On remand, the ALJ should more fully consider Dr. Blanco's opinion, consistent with the Appeals Council's direction. Moreover, even if the ALJ properly decides not to afford Dr. Blanco's opinion controlling weight, she must consider the factors set forth above to determine what weight, if any, it should be afforded (which she did not do here).

As to Dr. Pelczar-Wissner's opinion, Tutolo argues that the ALJ inappropriately assigned it "partial weight." Dr. Pelczar-Wissner, who performed a consultative orthopedic examination in September 2015, "opined that the claimant has marked restrictions for range of motion activities of the cervical spine and cannot do any bending, heavy lifting, carrying, or full rotatory movements." Doc. 23 at 1021. Dr. Pleczar-Wissner further opined that Tutolo had "moderate restrictions for rapid alternating movement of the hands because of carpal tunnel syndrome bilaterally and marked restrictions for bending, kneeling, and crouching." *Id.* In her opinion, Tutolo "could never lift/carry, and sit for 6.5 hours, stand for a total of 30 minutes and walk for a total of 60 minutes in an 8-hour day." *Id.* The ALJ found that this opinion was "generally consistent with the findings on the examination." *Id.* However, she afforded the opinion only "partial weight," because "the part of the opinion that the claimant can never lift and stand/walk less than two hours total is inconsistent with the fact that the claimant was

15

working as a cashier for six hours a day bagging liquor bottles." *Id.* As support for her finding, the ALJ relied on Tutolo's testimony.

Tutolo argues that the ALJ rejected Dr. Pelczar-Wissner's lifting and standing limitations for erroneous reasons, and then failed to either adopt or reject the postural, manipulative, and reaching limitations described by Dr. Pelczar-Wissner. At the hearing, Tutolo testified that the liquor store had not provided her with a chair to sit on. The only seating they provided her with was "a cushion on top of the [conveyer] belt." Doc. 23 at 1050–51. "Otherwise," Tutolo testified, "I had to mostly stand[] and standing in one place that long was—I was trying to cut down and cut down and I just couldn't do it anymore." *Id.* at 1051. Although Tutolo's testimony could be read to support her position that she was allowed to sit for most of the day, it can also be read to support the ALJ's finding. There was substantial evidence, then, for rejecting this limitation. However, Tutolo is correct that the ALJ failed to address the other limitations described by Dr. Pelczar-Wissner. ALJs may reject all or parts of a medical opinion, but they must give good reasons for doing so. *See* 20 C.F.R. § 404.1527(c)(2). On remand, the ALJ should properly address the other limitations described by Dr. Pelczar-Wissner.

### 3. Carpal Tunnel Syndrome

Finally, Tutolo argues that the ALJ erred by failing to make any findings as to her carpal tunnel syndrome. Doc. 25 at 12–13. The ALJ noted that "[t]he claimant also had a history of carpal tunnel syndrome which was given some weight in limiting the claimant to frequent (6/8 hours) handling and fingering but not constant." Doc. 23 at 1019. However, the ALJ made no findings as to Tutolo's ability to feel or use her hands for fine or gross manipulation before making her RFC assessment. *Id.* On remand, the ALJ should make specific findings as to Tutolo's carpal tunnel syndrome and its impact on Tutolo's RFC.

## IV. CONCLUSION

For the foregoing reasons, Judge Fox's R&R is adopted in part and rejected in part. Tutolo's unopposed motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is granted, and the case is remanded to the Commissioner of Social Security for further proceedings. The Clerk of Court is respectfully directed to terminate the motion, Doc. 24.

It is SO ORDERED.

Dated: March 31, 2020
        New York, New York

EDGARDO RAMOS, U.S.D.J.